[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-12665

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2001
THOMAS K. KAHN
CLERK

NLRB No. 12-CA-20506

NATIONAL LABOR RELATIONS BOARD,

                                   Petitioner-Cross-Respondent,

versus

GLADES HEALTH CARE CENTER,

                                   Respondent-Cross-Petitioner.

_____

Application for Enforcement and Cross-Petition for Review of an Order
of the National Labor Relations Board

_____

(July 20, 2001)

Before HULL, RONEY and GOODWIN*, Circuit Judges.

RONEY, Circuit Judge:

_____

         *Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

The National Labor Relations Board (Board) and "Unite! Union of Needletrades, Industrial and Textile Employees, AFL-CIO, CLC (Union) as intervenor petition for enforcement of the Board's orders directing the employer, Glades Health Care Center (Company) to recognize and bargain with the Union. The Company cross-petitions for review and to have set aside orders of the Board (1) certifying the Union as the collective bargaining representative for certain of the Company's employees and (2) finding that the Company engaged in an unfair labor practice by refusing to bargain with the Union in violation of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). The Company alleges several pre-election improprieties the cumulative effect of which it argues has tainted the laboratory conditions required in such elections. *See General Shoe Corp.*, 77 NLRB 124,127 (1948). Specifically, the Company claims that its refusal is justified and the Board should have set aside the election because (1) the Union engaged in campaign practices that are prohibited under *Peerless Plywood Co.,* 107 NLRB 427 (1953) and its progeny; (2) an eligible voter was improperly disenfranchised when she received two phone calls from purported Union agents with one caller asking if the Union had her support, and the other caller providing false information regarding the time of the election; and (3) a torn piece of a ballot was discovered following the election. The Company also claimed error in the Board's refusal to reopen the record to admit

2

additional evidence and in ordering the Company to bargain and provide information. Based upon the findings of fact by which this Court is bound, we are not persuaded that the Board erred in holding that the Union's rally did not violate the rule in *Peerless Plywood*. Accordingly, we hold that the Board did not abuse its discretion in certifying the Union as the collective bargaining representative for certain of the Company employees, and the Board's petition for enforcement is GRANTED. The Company's cross-petition for review and to have the Board's orders set aside is DENIED.

1. *The Election.*

Glades Health Care Center operates a nursing home in Pahokee, Florida. On May 24, 1999, the Union filed a petition with the Board seeking certification as the collective bargaining representative of the Health Care Center's certified nursing assistants (CNAs), housekeeping, laundry and maintenance employees and others. Pursuant to a stipulated election agreement entered into by all parties, on July 7, the Board conducted a secret-ballot election at the Company.

The Union had set up shop in a vacant house across a two-lane road that borders the facility about fifty yards away. The house is clearly visible from the front entrance of the facility, from the west wing of the facility and some residents' windows. On July 6, 1999, the day before the election, the Union set up a rally from about 2:15 p.m.

until about 4:30 p.m. during which it broadcast music and speeches from the driveway of the house using bullhorns and a public address system. Employees at the Company work in two shifts: day shift is from 7:00 a.m. to 3:00 p.m. and afternoon shift is from 3:00 p.m. to 11:00 p.m. The rally coincided with this shift change.

When the election was completed, the tally of ballots showed that of the 77 eligible voters, 38 voted for the Union, 30 voted against and 4 were challenged ballots. The Company filed seven objections, arguing that the Board should set aside the election because of the Union's pre-election conduct. After conducting a hearing on the objections, the hearing officer issued a report recommending that the Company's objections be overruled and that the Union be certified as the employees' bargaining representative. The Company filed an exception to the hearing officer's findings, and on October 12, 1999, the Board issued a decision adopting the hearing officer's findings and certifying the Union.

The Company then sought to reopen the record to admit an undated articled from the Union's newsletter as evidence the Company claimed would require the Board to sustain one of the Company's election objections and set aside the election. The Board denied the Company's motion, finding that the article would not alter the Board's decision.

Following the Union's certification, the Company refused to bargain. The Board found that the Company violated § 8(a)(5) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. 158(a)(5) and (1), by refusing to bargain with the Union, and required the Company to bargain with the Union upon request and to post copies of a remedial notice. The Board and the Union as intervenor petition this Court for enforcement of the Board's order, and the Company seeks review and to have the order set aside.

*2.     The Peerless Plywood Rule.*

In *Peerless Plywood Co.,* 107 N.L.R.B. 427 (1953) the Board established a rule to be applied in all election cases that prohibits both employers and unions "from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election." 107 NLRB at 429. On the afternoon before the election, the Employer assembled employees on its property to have them listen to a speech. The Board explained that such a speech "tends to create a mass psychology which overrides arguments made through other campaign media and gives an unfair advantage to the party...who in this manner obtains the last most telling word." 107 NLRB at 429. The key to the decision was that the employees' attendance at the election speech was not voluntary.

Subsequently, the Board held it to be a violation when within twenty-four hours of the election and continuing for more than seven hours, the union broadcast campaign speeches and other material from a sound truck parked on the street across from the employer's plant. *See United States v. Gypsum,* 115 NLRB 734 (1956). The broadcast was audible inside parts of the plant. Approximately 50 of the 325 workers at the plant heard "or were in a position to hear" the sound trucks while working at their usual stations. *Gypsum,* 115 NLRB at 735.

Likewise, in *Industrial Acoustics v. NLRB,* 912 F.2d 717 (4th Cir. 1990) on the day before the election and on election day, the Union parked a car, mounted with a loudspeaker system 25-30 yards from the plant entrance and broadcast music and campaign messages during shift changes and lunch breaks. The Board held that the broadcasts, which extended into working hours and the captive lunch break, violated *Peerless Plywood*.

*Bro-Tech Corp. t/a Purolite*, 162 LRRM (BNA) 1399 (1999) was a case questioning whether music involved the campaign speech targeted in *Peerless Plywood*. The union in *Bro-Tech,* on the day of the election, broadcast tape-recorded music with pro-union lyrics from a sound truck parked across the street from the Employer's facility from 7:00 a.m. to 4:30 p.m. The Board determined that these facts established a violation of *Peerless Plywood*. "[J]ust prior to casting their votes, these

6

employees -- whether on their way in to work, on the job, and/or while leaving the plant -- were exposed to the Union's campaign broadcast whether they wished to hear it or not." 162 LRRM at 1402. The Board held it to be a violation even though the "speech" was in the form of songs. These cases established the principle that an election violation occurs when employee voters are forced to hear an election speech either by attendance at a required meeting or when they are at their required work stations.

The facts, as found by the Board, do not establish that such a violation occurred in this case. It is clear that in these cases following *Peerless Plywood*, there was a firm purpose to use vehicles equipped with loudspeakers to "intentionally broadcast campaign speeches" into the employer's facility so that the employees at their work stations could not avoid hearing it. There was no other purpose. In this case, by contrast, the Union held an off-premises rally, and while the Union used loudspeakers at the rally, "there is no evidence that it intended to use them for any purpose other than to broadcast its message to those who voluntarily chose to attend the rally."

The Company argues that the Board improperly weighed the evidence in this regard, and improperly failed to find that employees at their work stations were in a position to hear the election speech, and therefore were a captive audience. Under our standard of review, however, the findings of the Board will be upheld on appeal if

they are supported by substantial evidence in the record as a whole. *See Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259(11th Cir.1999). It is not enough to show that contrary findings might also be supported by the record.

There was varied testimony about the honking of horns and the disruption of the ability of employees on the job to hear what was being said. The hearing officer determined that:

> Since there was no credited evidence to the contrary, it seems that the eligible voters were unable to hear the exact words of the speech. In fact, none of the eligible voters who testified indicated that they heard any specific words or phrases.

As to the argument that the employees were a captive audience, the hearing officer found this:

> The Employer has indicated that the employees were a captive audience because they were unable to escape the noise of the union rally while on working time. However, a review of the witness testimony failed to reveal any hint of a violation of the *Peerless Plywood* prohibitions. The credited evidence supplied by the witnesses shows that the CNAs assigned to the shift on the west wing voluntarily peered out an opened window to see what the commotion was about, then closed the window and went about their business. The record also shows that several other eligible voters were outside for a few minutes during the rally to perform duties and may have overheard some of the commotion. Further, there is no credited evidence that any eligible voters heard any specific part of the speeches or the singing made during the rally. In fact, it is admitted by Jablonski and the other witnesses, that the union agents and

8

supporters were at least fifty yards away from the facility at all times during the rally on the day before the election.

We have carefully reviewed this case and conclude that these findings are supported by substantial evidence in the record as a whole. To deny enforcement here would require us to hold, in effect, that a union rally held off premises, close enough to the employees' place of business so that some peripheral sounds could be heard in the facility, was an election violation, even though the sound so heard did not rise to the level of coherent election speech. That would be a stretch of the basic principles derived from *Peerless Plywood* which, as yet, is unsupported by the cases.

*Peerless Plywood* was not intended to interfere with the rights of unions or employers to circulate campaign literature on or off premises at any time prior to the election, nor to prohibit the use of any other legitimate campaign propaganda or media. The Board stated that "the rule does not prohibit employers or unions from making campaign speeches on or off company premises during the 24-hour period if employee attendance is voluntary and on employees' own time." *Peerless Plywood* at 430.

We have reviewed the other objections of the Company to enforcement of the bargaining order and find them to be without merit.

PETITION FOR ENFORCEMENT GRANTED, and CROSS-PETITION FOR REVIEW DENIED.