**WARNER COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 15644.**

United States Court of Appeals
Third Circuit.

Argued May 6, 1966.

Decided Sept. 6, 1966.

**436**

Robert Kleeb, Philadelphia, Pa. (Arthur R. Littleton, John C. Peet, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., Richard C. Hotvedt, Morgan, Lewis & Bockius, Washington, D. C., on the brief), for petitioner.

Robert Giannasi, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., National Labor Relations Board, on the brief), for respondent.

Before STALEY, Chief Judge, and KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

Petitioner, Warner Company, requests us to review and set aside a decision and order of the National Labor Relations Board determining that Warner's "order takers" and "shippers" constitute an appropriate unit of employees for collective bargaining, and finding Warner Company guilty of an unfair labor practice by its refusal to bargain with the union certified by the Board for the unit in question. The Board has cross-petitioned for enforcement of its order.

The issue before us is whether there was substantial evidence adduced at the representation hearing to support the Board's conclusion that the members of the unit were "employees" rather than "supervisors" within the meaning of Section 2(11) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 152 (11). If the members are "supervisors" within Section 2(11), then Section 14(a) of the Act, as amended, 29 U.S.C.A. § 164(a) would relieve Warner Company of the duty to bargain with the certified bargaining representative of the unit. We hold that the members of the bargaining unit are "supervisors" and therefore the Board's finding and order must be set aside and denied enforcement.

The Warner Company is engaged in the building supplies business, including the sale of ready-mixed concrete, in the Greater Philadelphia market. The contested bargaining unit certified by the Board consists of persons who are employed at various distribution yards, and who generally are responsible for the receipt of orders and the delivery of Warner's products. Known as "shippers," "order takers," "dry shippers," and "shipper-order takers," (hereinafter called "shippers"), these men translate the customer requests into completed sales by advising customers, scheduling deliveries, ordering the drivers to make deliveries, and generally maintaining control over the operations necessary to these functions. The members of the unit, where more than one is employed at a distribution yard, are required to work closely together and to perform work within each other's nominal jurisdiction according to the particular demands of the work situation. In performing these functions, the shippers are responsible to a yard manager and must perform their jobs under the rules provided by the collective bargaining agreement between the Warner Company and the drivers' union.

Following a petition filed by the union seeking to organize the shippers, the regional director of the Board ordered a

representation hearing. Warner Company's position, at this hearing and at all times since, has been that the unit sought by the petitioning union is inappropriate solely because it consists entirely of supervisors. The evidence received at the hearing consisted of a few undisputed exhibits and the testimony of one witness, the Warner Company manager of industrial and public relations. The regional director found upon this record that, inter alia, " * * * Although * * * the facts herein are delicately balanced * * * the shippers * * * are not supervisors within the meaning of Section 2(11) of the Act * * *. Eastern Greyhound Lines, 138 NLRB 8 * * *." [1]

■ The supervisory status of given employees has frequently been litigated before the Board and the courts. The question is important because under the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947, supervisors are deprived of the right to organize and to bargain collectively under the Act's protection. NLRB v. Edward G. Budd Mfg. Co., 169 F.2d 571 (C.A.6, 1948), cert. denied sub nom. Foreman's Ass'n of America v. Edward G. Budd Mfg. Co., 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949). Supervisors are excluded from the coverage of the term "employee" in Section 2(3), and Section 14(a) provides that employers subject to the Act are not obligated to treat supervisors as employees for the purpose of any laws relating to collective bargaining. Therefore, if a unit certified by the Board contains supervisory personnel, the unit is improper and the employer does not have to bargain with it.

■ Supervisory personnel are distinguished from employees by Section 2(11) of the Act which provides:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

An employee will be deemed a supervisor under the Act if he possesses *any one* of the types of authority listed in Section 2(11) and the exercise of such authority is non-routine and entails the use of independent judgment. E. g. West Penn Power Co. v. NLRB, 337 F.2d 993, 996 (C.A.3, 1964).

■ The distinction between employees and supervisors is frequently difficult to draw: " * * * the gradations of authority 'responsibly to direct' the work of others from that of general manager or other top executive to 'straw boss' are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor.'" NLRB v. Swift & Co., 292 F.2d 561, 563 (C.A.1, 1961). While such deference to the Board's determination is necessary, upon an appeal we must examine the record as a whole to determine whether there is substantial evidence to support the Board's findings. " * * * [A] reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

---

1. The case relied upon by the regional director was subsequently denied enforcement. Eastern Greyhound Lines v. NLRB, 337 F.2d 84 (C.A.6, 1964). The facts in Eastern Greyhound are similar to those herein, but we do not rely on this for our holding.

Since it is only necessary that the shippers exercise *one* of the types of authority listed in Section 2(11), supra, we need not here review each function performed by them.[2]

## The Power to Adjust Grievances

██ In his decision after the representation hearing, the regional director found that " * * * The record also shows that the shippers handle minor complaints, but that written grievances are referred to the Yard Manager in accordance with contractual provisions." Therefore, he concluded that " * * * The manner of grievance handling, the elaborate and detailed contractual provisions governing hiring and employment conditions, and the highly centralized and comprehensive collective bargaining patterns indicate that the * * * shippers do not 'adjust grievances or effectively recommend such action.' "

At the hearing, the uncontradicted testimony of the witness was that the shippers confer with the steward of the drivers' union on complaints regarding work or vehicle assignments, work during lunch periods, starting times, and so forth. The shippers may settle the complaint without consultation with the yard manager if he thinks that the complaint is meritorious. If the steward remains unsatisfied or the shipper rejects his complaint, the steward may then file a formal written grievance with the yard manager in accordance with the drivers' collective bargaining agreement.

The regional director characterized this process as the disposition of "minor complaints" rather than the adjustment of grievances. This conclusion was based upon the "elaborate and detailed" contract noted above which does contain a formal grievance procedure. Under the contract, a grievance is defined very broadly to include "any controversy between the Employer and the Union con-

cerning compliance with any of the provisions of this Agreement." The grievance must be made in writing within seven days after the basis therefor has become known to the grievant, and must be presented to the "plant manager or his duly authorized representative" for a written disposition. The regional director apparently concluded that since there was no showing that the shippers made written dispositions of grievances, they did not "adjust grievances" within the meaning of the Act.

We cannot agree with this conclusion. Those so-called "minor complaints" are such disputes as fairly fall under the provisions of the drivers' contract, and which would amount to "grievances" if reduced to writing. The conclusion is inescapable that the shippers informally resolve grievances. We do not need to decide that such a course of conduct constitutes a modification of the drivers' agreement. What we are concerned about here is the fact that the shippers do resolve disputes over working conditions on behalf of their employer, exercising independent judgment, and thus "adjust grievances" for the purposes of the Act.

## The Power to Discipline Other Employees

In the regional director's decision after the representation hearings, he noted only that " * * * Testimony adduced during the hearing discloses that work rules violations are reported by the shippers to the Yard Manager and that disciplinary action is governed by provisions of the labor agreement." Our review of the record relied upon by the regional director convinces us that there is not substantial evidence for the regional director's tacit conclusion that the shippers did not exercise disciplinary authority such as to render them supervisors within the contemplation of the Act.

The regional director was obviously swayed by the very specific contract be-

---

**2.** We note, but do not rely upon, the fact that if the shippers in question were not supervisors, there would be only one supervisor in control of most of the Warner yards, and a ratio of employees to supervisors ranging as high as 73:1, depending upon the season.

tween Warner Company and the drivers' union. The agreement contains rules of conduct and specific penalties for their violation. The Board in its brief similarly relied on this contract to show that the shippers do not have discretion in disciplining other employees, but only report the *fact* of violation to the yard manager for imposition of penalties.

While it is true that the contract does provide certain uniform work rules and specific penalties, the contract itself states that the rules and regulations therein were formulated as "guideposts." Moreover, it expressly provides that the signatory company has not thereby limited the violations for which it may discipline employees to those covered in the contract and "The Company may even discipline in other types of cases should the situation warrant."

 The uncontradicted testimony at the representation hearing was that the shippers can send a man home immediately for refusal to work or for reporting for work when intoxicated or otherwise unfit to drive the truck, and he can do this without any prior consultation with the yard manager. In fact, this power is necessary for the yard manager is frequently off the premises when the shippers assign the first deliveries for the day. It can scarcely be denied that sending a man home is discipline or that it does require the use of independent judgment. West Virginia Pulp & Paper Co., 140 N.L.R.B. 951 (1963).

The record also shows that the shippers call the plant manager's attention to instances of habitual lateness or absence and other violations of the work rules. The Board maintains that since the contract usually specifies the discipline to be imposed in such cases, such reporting does not constitute discretionary action. We think, however, that the ascertainment of the *fact* of a work rule violation, such as "habitually late" or "unfit to drive" necessarily involves the exercise of the shipper's independent judgment. Valley Transit Co., Inc., 142 N.L.R.B. 658 (1963), enforced,

NLRB v. Valley Transit Co., 338 F.2d 697 (C.A.5, 1964). Indeed, the record discloses that for breach of many of the contract rules, the shipper is the only person to exercise discretion and independent judgment in regard to discipline.

In the light of the disposition we have made of the supervisory status of the shippers, we need not consider the other points raised by the petitioner.

The order of the National Labor Relations Board will be set aside and its petition for enforcement will be denied.