

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-1998

# Passavant Ret Health v. NLRB

Precedential or Non-Precedential:

Docket 97-3311,97-3380

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Passavant Ret Health v. NLRB" (1998). *1998 Decisions.* Paper 171.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/171

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 24, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-3311/3380

PASSAVANT RETIREMENT & HEALTH CENTER,

      Petitioner No. 97-3311

v.

NATIONAL LABOR RELATIONS BOARD,

      Respondent

NATIONAL LABOR RELATIONS BOARD,

      Petitioner No. 97-3380

v.

PASSAVANT RETIREMENT & HEALTH CENTER,

      Respondent

ON APPEAL FROM THE
NATIONAL LABOR RELATIONS BOARD
Case No. 6-CA-28468

Argued Thursday, February 12, 1998

Before: GREENBERG, NYGAARD, and McKEE,
Circuit Judges

(Opinion Filed: July 24, 1998)

John E. Lyncheski (argued)
Joseph M. McDermott
Cohen & Grigsby
625 Liberty Avenue
2900 CNG Tower
Pittsburgh, PA 15222-3115

Counsel for Petitioner/
Cross-Respondent Passavant
Retirement & Health Center

Aileen A. Armstrong
Peter D. Winkler
William M. Bernstein
 (argued on behalf of
 Aileen A. Armstrong)
National Labor Relations Board
1099 14th Street, N.W.
Washington, DC 20570-0001

Counsel for Respondent/
Cross-Petitioner National Labor
Relations Board

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Passavant Retirement & Health Center requests that we review a decision of the National Labor Relations Board which concluded that Passavant committed an unfair labor practice violating section 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. S 158(a)(1), (5). Passavant refused to bargain with the General Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 538 a/w International Brotherhood of Teamsters, AFL-CIO, the certified exclusive bargaining representative of a group of Licenced Practical Nurses,1 working as Passavant's Charge Nurses. The Board cross-petitions us to enforce its decision. Because we find that the LPN Charge Nurses are

_____

1. Standard nomenclature for nurses is LPN, for Licensed Practical Nurse, and RN, for Registered Nurse.

2

supervisors under the Act, we will grant Passavant's Petition For Review, reverse the Board's ruling, and deny its Petition to Enforce.

I.

Passavant is a continuing care retirement community, providing various levels of nursing services in its skilled nursing facility, separate assisted-living units, and independent-living apartments and cottages. The facility is under the overall supervision of an Executive Director. Directly below the Executive Director in Passavant's hierarchy is the Director of Clinical Services, who supervises the Independent Living Supervisor and the Director of Nursing. The Director of Nursing has an Assistant Director of Nursing, and both oversee the House Supervisors. Under the House Supervisors are the Head Nurses, who in turn supervise the Charge Nurses. The remainder of the nursing staff includes Nurses Aides and Resident Assistants. In the Independent Living portion of the facility, the Independent Living Supervisor directly oversees the Charge Nurses and Resident Assistants working there. Passavant's Nurses Aides and Resident Assistants are already governed by a collective bargaining agreement.

The Union originally petitioned for representation of all Passavant's LPNs. LPNs work alongside Registered Nurses as Charge Nurses and Head Nurses. To avoid confusion, it is worth noting that "Head Nurse" and "Charge Nurse" are job titles at Passavant, and the terms "Registered Nurse" and "Licenced Practical Nurse" denote different degrees of state licensure. The LPNs and RNs employed in those positions perform the same duties, except that RNs are qualified to perform a few more medical procedures such as drawing blood, and inserting feeding tubes and intravenous tubes. The Union amended its petition to exclude LPN Head Nurses from the proposed bargaining unit, as it recognized that they were supervisors, but did not amend the petition to include RNs employed as Charge Nurses. Thus, the bargaining unit here comprises only LPN Charge Nurses.

While the representation petition was before the NLRB Regional Director, Passavant moved to transfer the

3

proceeding to the Board, which had scheduled oral argument in two cases that also concerned the supervisory status of nurses. See Nymed, Inc., d/b/a Ten Broeck Commons, 320 N.L.R.B. 806 (1996); Providence Hosp., 320 N.L.R.B. 717 (1996). After finding that the LPN Charge Nurses were not supervisors and were an appropriate bargaining unit, the Regional Director denied Passavant's Motion to Transfer and ordered a representation election.

Passavant appealed the Regional Director's decision to the Board. Meanwhile, after an election, the ballots were impounded pending the Board's ruling. The Board denied Passavant's Request for Review, concluding that the Regional Director's analysis followed the Supreme Court's recent decision in NLRB v. Health Care & Retirement Corp., 511 U.S. 571, 114 S. Ct. 1778 (1994), and Board precedent.

The impounded ballots were then counted, and the Union won the election. The Regional Director certified the Union as the exclusive bargaining representative of Passavant's LPN Charge Nurses. The Union requested that Passavant enter into collective bargaining, but Passavant refused. The Union then filed unfair labor practice charges with the Board, and the Board's General Counsel filed a Complaint against Passavant. The Board granted the General Counsel's Motion for Summary Judgment, finding that Passavant had violated the NLRA by refusing to bargain. Passavant Retirement and Health Center, 323 N.L.R.B. No. 99 (Apr. 30, 1997).

The underlying decision of the Regional Director as to the representation election is before us pursuant to section 9(d) of the NLRA, 29 U.S.C. S 159(d). We have jurisdiction over this appeal under 29 U.S.C. S 160(e), (f). Our standard of review is deferential. We will uphold the Board's findings of fact if supported by substantial evidence in the record as a whole:

> "The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both."

4

Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S. Ct. 456, 466 (1951). We exercise plenary review over questions of law and the Board's application of legal precepts, Tubari, Ltd. v. NLRB, 959 F.2d 451, 453 (3d Cir. 1992); however, "[b]ecause of the Board's`special competence' in the field of labor relations, its interpretation of the Act is accorded special deference." Pattern Makers' League of N. Am., AFL-CIO, 473 U.S. 95, 100, 105 S. Ct. 3064, 3068 (1985). Moreover, a determination of "[w]hether a [bargaining] unit is appropriate involves a large measure of informed discretion vested in the Board and is rarely to be disturbed." St. Margaret Mem'l Hosp. v. NLRB, 991 F.2d 1146, 1152 (3d Cir. 1993).

II.

The Board concluded that by refusing to bargain with the Union, Passavant engaged in an unfair labor practice in violation of section 8(a)(1) and (5) of the National Labor Relations Act:

> (a)  It shall be an unfair labor practice for an e mployer --
>
> (1)  to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
>
> ...
>
> (5)  to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. S 158(a)(1), (5) (emphasis added). "The term `employee' shall include any employee ... but shall not include ... any individual employed as a supervisor ...." 29 U.S.C. S 152(3). The meaning of the term supervisor, of course, determines this case. In interpreting that term we turn first to the statute itself, which defines a "supervisor" as:

> "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other

5

employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

29 U.S.C. S 152(11).

If the LPN Charge Nurses fall within the Act's definition of supervisors, then it was not an unfair labor practice to refuse to bargain with them. Only two of our past decisions are relevant to this question. Neither, however, directly resolves the issue. In Tressler Lutheran Home for Children v. NLRB, 677 F.2d 302, 307 (3d Cir. 1982), after analyzing a First Amendment challenge, we noted that factually "[t]here is substantial evidence that [the LPNs] were not supervisory personnel." In NLRB v. Konig, 79 F.3d 354 (3d Cir. 1996), we did not reach the supervisory issue because the employer had waived it by failing to raise it properly.

Historically, the Board utilized a test for the supervisory status of nurses based on the "interests of the employer" language of section 2(11). Beverly Enterprises--Ohio d/b/a Northcrest Nursing Home, 313 N.L.R.B. 491, 493-94 (1993). That test "examines whether the alleged supervisory conduct of the charge nurses is the exercise of professional judgment incidental to patient care or the exercise of supervisory authority in the interest of the employer." Id. at 493.

The Supreme Court rejected this analysis in Health Care. First, the Court set forth the proper framework for determining the supervisory status of employees:

> "[T]he statute requires the resolution of three questions; and each must be answered in the affirmative if an employee is to be deemed a supervisor. First, does the employee have authority to engage in one of the 12 listed activities? Second, does the exercise of that authority require `the use of independent judgment'? Third, does the employee hold the authority `in the interest of the employer'?"

Health Care, 511 U.S. at 573-74, 114 S. Ct. at 1780. The Court then reasoned that the Board's "patient care" test was inconsistent with the NLRA:

> "[T]he Board has created a false dichotomy--in this case, a dichotomy between acts taken in connection with patient care and acts taken in the interest of the employer. That dichotomy makes no sense. Patient care is the business of a nursing home, and it follows that attending to the needs of the nursing home patients, who are the employer's customers, is in the interest of the employer. We thus see no basis for the Board's blanket assertion that the supervisory authority exercised in connection with patient care is somehow not in the interest of the employer."

511 U.S. at 577-78, 114 S. Ct. at 1782 (citation omitted). Its conclusion does not render the interest of the employer requirement meaningless, however. Rather, the statutory "language ensures, for example, that union stewards who adjust grievances are not considered supervisory employees and deprived of the Act's protections." Id. at 579, 114 S. Ct. at 1783.

Health Care was decided on very narrow grounds. It did not interpret the meaning of "independent judgment" or "responsibly to direct." Instead, the Court agreed with the Board that those phrases "are ambiguous, so the Board needs to be given ample room to apply them to different categories of employees." Id. The Court also noted that "in applying S 2(11) in other industries, the Board on occasion reaches results reflecting a distinction between authority arising from professional knowledge and authority encompassing frontline management prerogatives." Id. at 583, 114 S. Ct. at 1785. Finally, the Court noted that its decision "casts no doubt on Board or court decisions interpreting parts of 2(11) other than the specific phrase `in the interest of the employer.' " Id.

Since Health Care, the Board has purported to analyze the supervisory status of "charge nurses the same as all other employee classifications and shall apply to them the same test [it] applies to all other employees." Nymed, 320 N.L.R.B. at 810. In doing so, the Board has come to lean heavily upon the question of nurses' independent judgment to determine their supervisory status. See, e.g., id. ("[T]he LPNs do not exercise independent judgment in making assignments or directing the work of the [certified nursing

7

assistants]."); Providence Hosp., 320 N.L.R.B. at 727 ("As with every supervisory indicium, assignment must be done with independent judgment before it is considered to be supervisory under Section 2(11).").

III.

We need not enumerate every duty performed by Passavant's LPN Charge Nurses to conclude that they are supervisors. Only one of the twelve statutory indicia need be shown to support a finding of supervisory status. Health Care, 511 U.S. at 573, 114 S. Ct. at 1780. Here, upon the Board's own findings we can conclude that the LPN Charge Nurses exhibit two of the twelve possible statutory criteria of a supervisor, i.e., disciplinary authority and adjustment of grievances, and that those attributes were exercised using independent judgment, and in the interests of the employer.

A. Supervisory Criteria

The Board concluded that Passavant's Charge Nurses possessed the authority to send Aides home for flagrant conduct violations, such as resident abuse. Earlier, in a nonhealth care case, we determined that this type of authority is clearly disciplinary in nature. See Warner Co. v. NLRB, 365 F.2d 435, 439 (3d Cir. 1966) ("It can scarcely be denied that sending a man home is discipline ...."). The Board does not refer us to any authority that contradicts this rule. The only Board precedent we have found is Dad's Foods, Inc., 212 N.L.R.B. 500, 500-501 (1974) (The "limited authority ... to discharge employees for intoxication on the job and involvement in a fight ... is only a very restricted, and sporadic kind of authority, limited to certain specific predetermined kinds of misconduct. We do not believe that `authority' so narrowly confined both in time and scope, if it can be said to exist at all, is sufficient to establish supervisory status."). Our jurisprudence, however, is to the contrary and leads us to conclude, based on the Board's own factual findings, that Passavant's LPN Charge Nurses indeed possessed the authority to discipline.

8

The Board also opined that the "charge nurses can resolve minor problems or `gripes' raised by[nurses aides] and resident assistants concerning daily assignments, break time[s] and the like," but were not involved in the formal grievance procedure. "[I]t is the higher management authority, rather than LPN charge nurses who are the decision makers with respect to the responses and positions taken by the Employer concerning these [formal] grievances." Thus, the Board implicitly reasoned that resolving "gripes" does not rise to the level of adjusting grievances under the NLRA. This determination is consistent with other Board decisions. See Ohio Masonic Home, Inc., 295 N.L.R.B. 390, 394 (1989) ("[T]he fact that the charge nurses sometimes rely on their personal relationship with employees to resolve minor complaints regarding workload, the scheduling of lunches and breaks, or personality conflicts is insufficient to establish supervisory status."); Beverly Enters. d/b/a Beverly Manor Convalescent Ctrs., 275 N.L.R.B. 943, 946 (1985) ("The LPNs rely on their personal relationship to the employees to resolve problems informally. ... This facet is insufficient to elevate them to supervisory status."); see also Illinois Veterans Home at Anna, L.P., 323 N.L.R.B. No. 161, 156 L.R.R.M. 1105, 1107 (June 6, 1997) (requiring role in formal grievance procedure).

Passavant argues that the adjustment of even minor grievances is enough to support a finding of supervisory authority, again citing our decision in Warner. We agree. In Warner, a building supplies business employed drivers and shippers, both supervised by a Yard Manager. The drivers were already unionized, and the employer opposed the shippers' efforts to establish a union. Testimony revealed that the steward of the drivers' union often approached the shippers to settle minor complaints. We rejected the Board's conclusion that this activity did not amount to the adjustment of grievances: "Those so-called `minor complaints' are such disputes as fairly fall under the provision of the drivers' contract, and which would amount to `grievances' if reduced to writing." Warner, 365 F.2d at 438.

Here, the collective bargaining agreement between Passavant and the Nurses Aides includes sections

9

pertaining to assignments, break times, and lunch breaks. Additionally, its definition of "grievance" is very broad. Just as in Warner, the LPN Charge Nurses at Passavant have the authority to adjust the Aides' grievances and meet the "supervisory" criterion.

B. Independent Judgment

Because we have concluded that Passavant's LPN Charge Nurses exhibit two of the statutory criteria, we must now decide whether they exercised that authority with independent judgment. We conclude that they did.

The Board found that "the authority to suspend employees for flagrant violations such as the abuse of patients is not an indicium of supervisory authority because no independent judgment is involved because the offenses are obvious violations of the Employer's policies and speak for themselves." (App. at 94a n.53 (citation omitted).) This conclusion is also found in several other Board decisions, including Northcrest:

> "[M]any cases indicate that charge nurses have authority to suspend employees for flagrant violations such as drunkenness or abuse of patients. The Board has not found this an indicium of supervisory status because no independent judgment is involved; the offenses are obvious violations of the employers' policies and speak for themselves. ... Accordingly, in making future supervisory determinations, we have decided that whether a ... suspension relates to patient care or not, it will be examined only as to ... in the case of suspension for flagrant violation, whether independent judgment was involved."

313 N.L.R.B. at 497–98; accord Manor West, Inc. 313 N.L.R.B. 956, 959 (1994). We, however, rejected a similar argument in Warner, saying: "It can scarcely be denied that sending a man home is discipline or that it does require the use of independent judgment." 365 F.2d at 439. We see little to commend a distinction based upon how flagrant the violation happens to be. Here, this type of dismissal could not be considered a routine or clerical function; it consists of a Charge Nurse imposing her independent judgment

10

upon, and exercising her authority over a subordinate, however subtle or flagrant the violation.

Similarly, we found in Warner that a supervisor exercises independent judgment when resolving grievances:"What we are concerned about here is the fact that the shippers do resolve disputes over working conditions on behalf of their employer, exercising independent judgment, and thus `adjust grievances' for the purposes of the Act." Id. at 438. Although we afford deference to the Board, we are not at liberty to ignore our own jurisprudence, which dictates our decision.

Finally, we are not creating a per se rule that LPNs are supervisors. Each case requires a detailed factual application of the twelve statutory criteria. Nor do we take issue with any of the Regional Director's factual, findings. We do, however, reject its application of the law to the facts.

IV.

In sum, we conclude that the Charge Nurses' authority to send Aides home for flagrant violations is an exercise of discipline, and when they dispose of minor gripes, they are adjusting grievances; and in both, they are exercising independent judgment. Additionally, the parties do not dispute that this authority is exercised in the interest of the employer. Under these circumstances, we hold that the LPN Charge Nurses are supervisors within the meaning of the Act. Accordingly, we grant Passavant's Petition for Review, reverse the Board's order, and deny its Petition to Enforce.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11