GRIFFIN, J., delivered the opinion of the court in which, CLAY, J., joined. MERRITT, J. (pp. 412-15), delivered a separate dissenting opinion.
*405 OPINION
GRIFFIN, Circuit Judge.
This case involves the question whether registered nurses (RNs) employed as charge nurses at Golden Living Center (the “Center”) are “supervisors” under the National Labor Relations Act (the “Act”). If they are, federal law does not allow them to collectively bargain with their employer. After an evidentiary hearing, the regional director of the National Labor Relations Board concluded that the RNs are not supervisors. We review to determine whether substantial evidence supports that determination and hold that it does not. Accordingly, we grant the Center’s petition for review, vacate the Board’s order, and deny the Board’s cross-application for enforcement.
I.
The Center operates a licensed nursing home in Springfield, Tennessee, that employs approximately 100 individuals. The facility provides short- and long-term care to approximately 120 residents split evenly between the facility’s two wings — East and West. Patients range from those who are fully alert to those who are not.
The employment hierarchy at the nursing home is as follows: the Executive Director oversees the entire facility. Various department heads, including a Director of Nursing, report directly to the Executive Director. Two Assistant Directors of Nursing directly oversee each of the facility’s two wings. Those primarily responsible for patient care include 12 RNs, 10 licensed practical nurses (LPNs), and 46 certified nursing assistants (CNAs). The Center refers to its RNs and LPNs as “charge nurses.” (While RNs and LPNs have the same duties, only the RNs attempted to collectively bargain.) Charge nurses report directly to the Director of Nursing or her designee. Typically, two charge nurses are assigned to each wing at a time. The number of CNAs assigned to each wing varies from two to six.
In October 2011, the International Association of Machinists and Aerospace Workers, AFL-CIO (the “Union”), petitioned the Board and sought to represent the Center’s RNs in collective bargaining. The Center opposed the petition, claiming that its RNs (all charge nurses) were “supervisors” under the Act and therefore not permitted to unionize. See 29 U.S.C. §§ 152(3), 157. A hearing was held where evidence was received. In November 2011, the Board’s regional director concluded that the RNs are not supervisors, certified the requested bargaining unit, and directed an election. The Board declined further review. The following day, the RNs elected the Union as their bargaining representative.
A week later, the Union asked the Center to bargain with it. The Center refused, prompting a complaint with the Board that alleged unfair labor practices. See 29 U.S.C. § 158(a)(1), (5). The Center admitted its refusal to bargain and contested only the regional director’s decision to certify the bargaining unit. The Board sustained the Union’s complaint and ordered the Center to bargain with it. This petition for review and cross-application for enforcement followed.
II.
Before addressing the merits of the Center’s petition, we consider a question raised regarding the composition of the Board. After briefing was complete, the Center filed a letter citing as supplemental authority the D.C. Circuit’s recent opinion, Noel Canning v. NLRB, 705 F.3d 490 (D.C.Cir.2013), cert. granted, — U.S. —, 133 S.Ct. 2861, — L.Ed.2d —, 2013 WL 1774240, 81 U.S.L.W. 3629 (June *406 24, 2013). In its supplemental authority letter, the Center asserted that the Noel Canning decision supplied “an additional, independent ground for vacating the Board’s Order in this matter.” Because the Center contends that its new argument has jurisdictional significance, we consider it at the outset. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 88-89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
In Noel Canning, the D.C. Circuit held that an order of the Board was void because it was issued at a time when the Board did not have at least three lawfully appointed members. Our sister circuit ruled that at the time the order was issued, three of the Board’s five members had been appointed by the President without “the Advice and Consent of the Senate,” in violation of the Constitution’s Appointments Clause.[1] The court rejected the Board’s argument that the President had legally bypassed that constitutional requirement by invoking the Recess Appointments Clause[2] and appointing the members during an mirasession “recess” of the Senate, i.e., one of the “breaks in the Senate’s business when it is otherwise in a continuing session.” Noel Canning, 705 F.3d at 499-500. The court found the Board’s interpretation of the clause contrary to its text, structure, and historical interpretation, which all suggest that “the Recess” refers instead only to miersession recesses, ie., breaks between “the usually two or sometimes three sessions per Congress.” Id. at 499-507. The court also concluded that the appointments were invalid because the vacancies they filled did not “happen” during a break between formal Senate sessions. Id. at 507-14.
The parties agree that Noel Canning’s legal conclusions, if followed here, would render the Board’s order void. The Board asks that we not take up the challenge to its authority, claiming that the Center forfeited the argument by making it for the first time in a letter to us filed under Federal Rule of Appellate Procedure 28(j). See Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735, 748 n. 9 (6th Cir.2005) (declining to consider a defense asserted for the first time in this way). The Center responds that its challenge is “jurisdictional” and thus can never be forfeited. If true, that would require us to address it before any non-jurisdictional challenges. See Steel Co., 523 U.S. at 88-89, 118 S.Ct. 1003. But the Center is mistaken. Errors regarding the appointments of officers under Article II are “nonjurisdictional.” See Freytag v. Comm’r, 501 U.S. 868, 878-79, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991); accord Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd., 574 F.3d 748, 756 (D.C.Cir.2009) (per curiam).
Noel Canning did not suggest otherwise. Its discussion of “jurisdiction,” 705 F.3d at 496-98, concerned its statutory authority to consider challenges not first presented to the Board, see 29 U.S.C. § 160(e),[3] an exhaustion-type requirement *407 that the Supreme Court has characterized as “jurisdictional,” see Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982); it did not concern jurisdiction in the sense that the court had an independent obligation to raise and consider the matter on its own, at the threshold, before reviewing the merits of the Board’s decision, cf., e.g., Steel Co., 523 U.S. at 88-89, 118 S.Ct. 1003. That the D.C. Circuit in Noel Canning considered the petitioner’s statutory challenge before addressing the constitutional one further demonstrates that it did not deem the constitutional one jurisdictional. But see NLRB v. New Vista Nursing & Rehab., 719 F.3d 203, 209-13, 2013 WL 2099742, at *3-6 (3d Cir. May 16, 2013) (deeming “jurisdictional” the statutory requirement that the member-groups to whom the Board delegates its authority always have at least three members, and concluding that “any reason” why the group has less than that {e.g., an invalid Presidential appointment) can be raised as a jurisdictional defect). Because we hold that the Center’s belated challenge is not “jurisdictional,” we are not compelled to consider it. Nor need we consider excusing the Center’s forfeiture in our discretion, for we are granting it the relief it seeks on the basis of its non-constitutional challenge. Cf. Noel Canning, 705 F.3d at 493.
III.
We review the Board’s decision using the substantial-evidence standard. 29 U.S.C. § 160(e), (f). Under this standard, the decision stands if it is supported by “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotation marks omitted). This standard, though deferential, does not permit the Board to ignore relevant evidence that detracts from its findings. Id. at 488, 71 S.Ct. 456. And when the Board “misconstrues or fails to consider important evidence, its conclusions are less likely to rest upon substantial evidence.” Lakeland Health Care Assocs., LLC v. NLRB, 696 F.3d 1332, 1335 (11th Cir.2012) (internal quotation marks omitted).
IV.
A.
Only “employees” have the right to bargain collectively under federal law. 29 U.S.C. § 157. The Act defines the term broadly (and somewhat circularly, see id. § 152(3) (“shall include any employee ... ”)), but excludes “any individual employed as a supervisor,” id. A supervisor is
any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
Id. § 152(11). The Act thus creates “a three-part test for determining supervisory status.” NLRB v. Kentucky River Cmty. Care, Inc., 532 U.S. 706, 712-13, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001). Individuals are supervisors if (1) they hold the authority to engage in any one of the twelve listed supervisory functions, (2) their “exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment,” and (3) their authority is held “in the interest of the employer.” 29 U.S.C. *408 152(11); see Kentucky River, 532 U.S. at 713, 121 S.Ct. 1861. The burden of proving supervisory status falls on the party asserting it. Frenchtown Acquisition Co. v. NLRB, 683 F.3d 298, 305 (6th Cir.2012).
The Center argued to the Board’s regional director that its RNs are supervisors because they have authority to discipline, assign, and responsibly direct CNAs, all by using independent judgment. It now argues that substantial evidence does not support the regional director’s contrary determination.
B.
We begin with the Center’s argument on discipline. The Board’s regional director determined that the Center’s RN charge nurses lacked the authority to discipline CNAs, reasoning that they “merely report misconduct” to the Director of Nursing, a function that he concluded “does not constitute supervisory authority.” Critical to his determination was that RNs did not determine or provide input regarding what level of discipline to impose. The regional director further concluded that the RNs’ authority to send CNAs home for the remainder of their shift in cases of patient abuse also does not establish supervisory status.
We summarily reject the Center’s challenge to this last conclusion. The Board has repeatedly found that authority to send home employees, when limited to flagrant misconduct (e.g., behavior that endangers the health or safety of patients), does not require independent judgment and therefore cannot establish supervisory authority. See, e.g., Vencor Hosp.-L.A., 328 NLRB 1136, 1139 (1999); Northcrest Nursing Home, 313 NLRB 491, 497 (1993). And we have agreed. See Frenchtown, 683 F.3d at 309; accord Jochims v. NLRB, 480 F.3d 1161, 1171-72 (D.C.Cir.2007); but see Warner Co. v. NLRB, 365 F.2d 435, 439 (3d Cir.1966) (“It can scarcely be denied that sending a man home is discipline or that it does require the use of independent judgment.”). The regional director’s decision in this respect is consistent with the Board’s precedent and our own.
Turning to the heart of the regional director’s decision on discipline, we must decide whether substantial evidence on the record as a whole supports the determination that the Center’s RNs perform only a reporting function with respect to CNA misconduct, something the parties agree does not create supervisory status, see also Carlisle Engineered Prods., Inc., 330 NLRB 1359, 1360 (2000). According to the Center, the record evidence shows that the disciplinary authority its RNs possess defies the regional director’s characterization, and his adverse ruling is based upon a fundamental misunderstanding of the Center’s disciplinary regime. We agree.
When confronted with CNA misconduct, RNs can either do nothing, provide verbal counseling (and decide whether to document the counseling), or draw up a written memorandum; choosing the appropriate path in each instance, the Center contends, involves independent judgment. The Board responds that a verbal warning, documented or not, is educational in nature, not disciplinary. The Board is correct. The Center’s written disciplinary policy never mentions verbal warnings. Karen Price, an Assistant Director of Nursing at the Center, testified that “verbal counseling doesn’t count against you like a written warning would. It’s not part of the four-step process.” Charge nurse Vicki Jones said much the same. Thus, even though RNs have a choice between ignoring the infraction or offering verbal counseling, that does not make them supervisors because they do not impose discipline when giving verbal counseling. Cf. *409 Frenchtown, 683 F.3d at 306-08 (agreeing that “one-on-one in-services” used “to correct the aides’ performance by educating aides on what is expected of them” were “outside of the realm of discipline” where, among other things, the employer’s disciplinary policy did not mention them and they could not lead to formal discipline).
However, the Board’s point regarding the irrelevance of an RN’s choice between doing nothing and providing verbal counseling fails to answer the Center’s charge that RNs may also proceed by way of an employee memorandum, which the Center contends is part of its progressive disciplinary system and is thus discipline. The Center’s arguments are persuasive. Receipt of an employee memorandum leads automatically to a written warning, which is a “step” in the Center’s system of progressive discipline. Therefore, the authority that RNs have to issue memoranda to CNAs is the authority to discipline. And because RNs exercise independent judgment in choosing whether to issue a memo-randa or provide verbal counseling, they are supervisors under the Act. The Board’s failure to acknowledge that receipt of a written warning is itself discipline renders its contrary determination unsupported by substantial evidence. See, e.g., Lakeland Health Care Assocs., 696 F.3d at 1335.
The Center’s employee handbook divides disciplinary infractions into two camps. Category one violations “are the most serious and are subject to the employee’s immediate suspension, pending investigation for discharge” (e.g., resident abuse or neglect, possession of a firearm on the premises), while those in category two are “less serious in nature” (e.g., failure to perform assigned duties, poor work quality or productivity, stopping work early). Category one offenses “are subject to the employee’s immediate suspension, pending investigation for discharge.” Progressive discipline, by contrast, is imposed for category two types and gives the employee multiple opportunities before being suspended and then fired. “Written warnings” are received for an employee’s first three category two violations. Termination will normally occur for the fourth infraction. CNA Lena Harness, for example, was fired after receiving four memoranda in a year. Her first two were for failure to perform assigned duties; her last two were for violating the Center’s formal attendance policy.
The Center’s Human Resources Management Policies and Procedures Manual echos its handbook and provides further detail. It institutes the “Employee Memorandum,” which implements the Center’s discipline policy. A memorandum is valid for twelve months, after which time it “becomes invalid for use in progressive discipline or discharge^]” The manual also provides that “[violations of different rules are cumulative for purposes of progressive discipline even if unrelated or remote.” Each of the first three category two violations in a twelve-month period yields a written warning (steps “one” through “three”), with the fourth leading to suspension pending an investigation (step “four”). Discharge follows “if the investigation indicates that the misconduct occurred.”
Then there is the employee memorandum form itself. This pre-printed form includes a space for explaining the violation and for listing the employee’s disciplinary actions for the past twelve months; it appears that the charge nurse does not list the CNA’s prior disciplinary history and instead leaves that part blank. The form then asks for the category of violation observed, which the charge nurse indicates. If the box for “Category Two Violation” is noted, the form asks which “step” *410 in the process the violation constitutes, the answer to which depends entirely on the number of written warnings received over the last year. Charge nurses do not indicate which step is involved, because they typically do not know. The cited CNA signs the form on the line indicated “Employee,” and the charge nurse signs on the line for “Supervisor.” Sometimes the Director of Nursing or the Assistant Director signs the form, either underneath the charge nurse’s signature or sometimes as the sole signature of the “supervisor.” For example, Harness’s first two violations were signed by charge nurses; her last two were signed by the Director of Nursing.
Consistent with these documents, assistant nursing director Karen Price testified unequivocally that a memorandum is “considered a write-up or disciplinary action” that is part of the Center’s “four-step process.” That point is obvious, and not one person or document refutes it. Nevertheless, the Board contends that the Center failed to prove that employee memoranda “trigger investigations or have a disciplinary effect, or serve any purpose beyond informing management about employee misconduct.” That claim is inaccurate and not supported by the record.
The Board relies upon a single exchange between counsel and charge nurse Vicki Jones:
Q. Is your role then limited to documenting the incident or do you do more?
A. That’s it.
But Jones also testified that she can “impose discipline” upon CNAs who violate company policy by completing a memorandum. And while an RN’s role in the process is limited to completing the employee memorandum and submitting it to the Director of Nursing, it is that very act that leads directly and automatically to a written warning — a “step” in the company’s policy of progressive discipline.
The Board’s position on discipline is essentially that, to be considered “discipline,” the employee must suffer some immediate adverse employment action as a result of receiving an employee memorandum, such as suspension or termination, and because RN charge nurses cannot suspend or terminate a CNA’s employment unilaterally, they lack authority to discipline. This position runs headlong into the labor statute’s plain text. Discipline cannot be synonymous with suspension or termination, for the statute lists these supervisory functions individually, and in the disjunctive: A supervisor is “any individual having authority ... to ... suspend, ... discharge, ... or discipline other employees....” 29 U.S.C. § 152(11) (emphasis added); see Kentucky River, 532 U.S. at 713, 121 S.Ct. 1861 (supervisors “hold the authority to engage in any 1 of the 12 listed supervisory functions” (emphasis added)). Equating the term discipline with the terms suspend or discharge would render it superfluous, a reading we must try to avoid. See Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). The term discipline must capture something less.
The Board has in other cases acknowledged that discipline is something less. It has said, for example, that “for the issuance of reprimands or warnings to constitute statutory supervisory authority, the warning must not only initiate, or be considered in determining future disciplinary action, but also it must be the basis of later personnel action without independent investigation or review by other supervisors.” Phelps Cmty. Med. Ctr., 295 NLRB 486, 490 (1989) (internal quotation marks omitted). Further, a warning need not “automatically lead[] to an action affecting employment.... [I]t is sufficient *411 that the discipline has the real potential to lead to an impact on employment.” Progressive Transp. Servs. Inc., 340 NLRB 1044, 1046 (2003). The Board has also explained that write-ups are a form of discipline where they “lay a foundation, under [a] progressive disciplinary system,” for later personnel action, such as suspension or termination. Oak Park Nursing Care Ctr., 351 NLRB 27, 28, 29 (2007). Generally, where an employer maintains a defined progressive discipline policy, and cited violations of company policy count toward the number of missteps permitted before termination, those with independent authority to issue the citations are supervisors. See, e.g., Concourse Vill., Inc., 276 NLRB 12, 13 (1985); see also Waverly-Cedar Falls Health Care, 297 NLRB 390, 392 (1989); Ohio Masonic Home, 295 NLRB 390, 393-94 (1989); Passavant Health Ctr., 284 NLRB 887, 889-90 (1987).
In the present case, the written warnings that follow from receipt of an employee memoranda satisfy the criteria for discipline. Under the Center’s progressive discipline policy, the existence of earlier written warnings determines whether suspension and termination are imposed for a later category two violation, based upon the number of warnings already received that year. The actions giving rise to memoranda are investigated neither at the time of the infraction nor later, when the warning provides a basis for the CNA’s suspension and termination; only the fourth memoranda received in a twelvemonth period is investigated before the employee is terminated. The warnings thus “lay a foundation” for future adverse employment action. Accordingly, memo-randa/warnings are discipline. Substantial evidence does not support the regional director’s contrary determination.
The record also demonstrates that RNs exercise independent judgment when issuing employee memoranda. There is no doubt that when faced with a lesser violation the Center’s RNs choose whether to issue an employee memorandum (discipline), to provide verbal counseling (not discipline), or to take no action at all. The choice depends on the RN’s determination of how severe the violation is, and, indeed, the record contains instances of a CNA’s failure to perform assigned duties or having a poor work product being handled differently by the RNs; sometimes the CNA received verbal counseling, and sometimes she received a memorandum. The Board has before determined that making this type of choice requires independent judgment. See Oak Park Nursing Care Ctr., 351 NLRB at 29. We have said the same. See Extendicare Health Servs., Inc. v. NLRB, 182 Fed.Appx. 412, 417 (6th Cir.2006).
The larger question is whether the RNs must consult with a superior and obtain approval before issuing a memorandum; if they must, their judgment is unlikely “independent.” See Oakwood Healthcare, Inc., 348 NLRB 686, 692-93 (2006); Phelps Cmty. Med. Ctr., 295 NLRB at 490-91. The record shows that consultation and approval is neither required nor typical. Karen Price testified that none is required. She also said that memoranda are forwarded to her for information purposes only, so that she knows what happens on the floor, not so that she can approve (or reject) the RN’s decision.
In addition, Vicki Jones described her involvement with memoranda as follows: “I call [the Director of Nursing] on the phone. I show her where the situation is. I fill out the form and I slip it under her door. And I don’t hear anything back, no feedback on it.” She explained that sometimes the Director will suggest how to proceed, “[b]ut for the most part,” Jones continued, the Director “just listens.” *412 That advice sometimes is provided does not mean that Jones or others do not typically exercise discretion in deciding how to proceed — they do. Indeed, Jones’s use of the word sometimes demonstrates that it is not the norm. Compare Concourse Vill., 276 NLRB at 13 (worker’s issuance of some warnings pursuant to a superior’s directive did not negate supervisor status based on disciplinary authority, because the worker issued other warnings independently); with Highland Superstores, Inc. v. NLRB, 927 F.2d 918, 922 (6th Cir.1991) (leadman was not a supervisor when he issued a disciplinary notice only when instructed).
Just one statement from Jones points the other way’ and it cannot support a finding that RN authority to discipline is of a “routine or clerical nature.” When asked if she can resolve disciplinary problems on her own or if she instead seeks guidance, Jones responded, “I seek guidance.” But she neither explained her answer nor provided details. Moreover, she earlier testified that no one instructs her when to fill out an employee memorandum in a given situation; it is her choice. In view of the record as a whole, the Center plainly met its burden to demonstrate that its RNs utilize independent judgment in exercising their disciplinary authority.
V.
For these reasons, substantial evidence does not support the Board’s decision that RNs at the Center lack authority to discipline CNAs using their independent judgment. The record instead compels a contrary determination. The Center’s RNs are supervisors under the Act, and, as a result, the Center’s refusal to bargain with the RNs’ union representative did not violate the Act. We grant the Center’s petition for review, vacate the Board’s order of April 9, 2012, and deny the Board’s cross-application for enforcement.

. See U.S. Const, art. II, § 2, cl. 2 ("[The President] shall nominate, and by and with the advice and consent of the Senate, shall appoint ... all other officers of the United States[.]'').

. See U.S. Const, art. II, § 2, cl. 3 ("The President shall have power to fill up all vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session.”).

."No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.” 29 U.S.C. § 160(e); see also id. § 160(f). Noel Canning raised its Appointments Clause challenge for the first time in a petition for review. The D.C. Circuit held that extraordinary circumstances existed and took up the challenge.