NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0123n.06

No. 16-1310

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 23, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPLICATION FOR |
| | ) | ENFORCEMENT OF AN |
| LAKEPOINTE SENIOR CARE & REHAB | ) | ORDER OF THE NATIONAL |
| CENTER, LLC, | ) | LABOR RELATIONS BOARD |
| | ) | |
| Respondent. | ) | |

Before: MERRITT, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Lakepointe Senior Care & Rehab, LLC, operates a long-term care facility in Michigan. It employs licensed practical nurses and registered nurses, which together are called "charge nurses." The National Labor Relations Board permitted the charge nurses to bargain with Lakepointe through a union, SEIU Healthcare Michigan (the Union), because the Board determined that they were "employees" rather than "supervisors" under the National Labor Relations Act. That determination was not supported by substantial evidence, and thus we deny the Board's application for enforcement of its order requiring Lakepointe to bargain with the Union.

I.

The National Labor Relations Act gives employees, but not supervisors, the right to bargain collectively with their employers. 29 U.S.C. §§ 152(3), 157. The Board's regional directors determine who counts as an "employee" under the Act (and thus who has a right to

union representation) in "representation proceeding[s]." *See* 29 C.F.R. §§ 102.61, 102.67. After the Board identifies a group of employees who are entitled to union representation, it allows them to vote on whether the union will represent their interests. *See* 29 U.S.C. § 159. If a majority of the employees vote to join the union, but their employer refuses to bargain with it, the Board may find that the employer has committed an "unfair labor practice" in violation of the Act and order the employer to bargain. *Id.* §§ 158(a)(5), 159, 160.

In 2005, the Union asked the Board to recognize Lakepointe's charge nurses as employees under the Act, so that the Union could represent them. In the representation proceeding that followed, the Board found that Lakepointe's charge nurses were supervisors rather than employees. It therefore denied the Union's request. About ten years later, the Union filed another petition with the Board, again seeking to bargain on behalf of Lakepointe's charge nurses. Lakepointe moved to dismiss, arguing that the Board's earlier determination that the nurses were supervisors barred the Union's second petition to represent them. The Board's regional director denied Lakepointe's motion and held a representation hearing, during which Lakepointe offered evidence that its charge nurses supervised its certified nursing assistants. The regional director determined that Lakepointe's charge nurses were employees and thus were entitled to union representation. A majority of the nurses thereafter voted to join the Union, but Lakepointe refused to bargain with the Union on their behalf. The Union filed a complaint with the Board, which determined that Lakepointe's refusal was an unfair labor practice. Hence the Board ordered Lakepointe to bargain. The Board now petitions for enforcement of that order.

II.

A.

As an initial matter, Lakepointe argues that the Board misapplied its nonrelitigation rule. We review for an abuse of discretion the Board's application of this rule, which bars parties from "litigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the [prior] representation proceeding." 29 C.F.R. § 102.67(g); *Salem Hosp. Corp. v. NLRB*, 808 F.3d 59, 73 (D.C. Cir. 2015).

Lakepointe contends that the Board's determination in 2005—that the charge nurses were supervisors—barred the Union from arguing that the nurses were employees in a second proceeding in 2015. But the Board prohibits relitigation in a "subsequent unfair labor practice proceeding," not a subsequent representation proceeding. 29 C.F.R. § 102.67(g). Here we have a subsequent representation proceeding, so the rule by its terms does not apply. The Board therefore did not abuse its discretion when it declined to apply the rule.

B.

Lakepointe argues that the charge nurses were supervisors and thus not entitled to unionize under the Act. *See* 29 U.S.C. § 152(3), (11). We review for substantial evidence the Board's determination that Lakepointe's charge nurses were employees. 29 U.S.C. § 160(e), (f); *Frenchtown Acquisition Co. v. NLRB*, 683 F.3d 298, 305-06 (6th Cir. 2012). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion[.]" *Williamson v. NLRB*, 643 F.3d 481, 485 (6th Cir. 2011) (citation omitted).

In representation proceedings, the employer bears the burden of showing, by a preponderance of the evidence, that the putative employees are actually supervisors. *Frenchtown Acquisition Co.*, 683 F.3d at 305. To be a supervisor, one must perform or "recommend" action

on at least one of twelve functions, which include imposing "discipline" on other employees. 29 U.S.C. § 152(11); *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001). A person who recommends discipline—or recommends any other kind of action under 29 U.S.C. § 152(11)—will be a supervisor only if her recommendations are "effective," which means that managers give weight to them. *See Caremore, Inc. v. NLRB*, 129 F.3d 365, 369-70 (6th Cir. 1997). Supervisors must also use "independent judgment" when deciding whether to exercise their authority. *Ky. River Cmty. Care, Inc.*, 532 U.S. at 713 (quoting 29 U.S.C. § 152(11)).

Here, the Board argues that Lakepointe's charge nurses were employees because, the Board says, the nurses did not effectively recommended discipline, among other things. Lakepointe presented evidence, however, that its nurses used disciplinary forms to "write up" certified nursing assistants (the "aides") for misconduct—and that those forms invariably led to discipline. The question here largely turns on whether the charge nurses imposed or recommended discipline when they wrote up the aides for misconduct with these forms.

1.

The Board contends that Lakepointe's charge nurses used the disciplinary forms merely to report the aides' work performance, not to recommend discipline. Where a person acts "as a conduit for information and exercises no judgment in passing the knowledge along to management," he does not independently recommend discipline. *Frenchtown Acquisition Co.*, 683 F.3d at 308 (citations omitted). But the evidence shows that Lakepointe's charge nurses were more than mere conduits. The nurses testified that, when they learned that an aide had violated work rules, they had a choice: they could counsel the aide, do nothing, or write up the aide with the disciplinary form. If the charge nurse chose to fill out the form, she would write down what the aide did wrong, explain what the aide should have done, and sign above a line

marked "supervisor." Absent the write-up, the aide would not be disciplined; and the charge nurses did not "consult with a superior" or get approval before filling out the disciplinary form. *GGNSC Springfield LLC v. NLRB*, 721 F.3d 403, 411 (6th Cir. 2013) (citation omitted). That the nurses had this choice, therefore, shows that they used independent judgment when deciding whether to write up aides. *Id.* at 409, 411; *In Re Progressive Transps. Servs., Inc.*, 340 N.L.R.B. 1044, 1046 (2003).

The record also shows that, when the charge nurses filled out these forms, they did so to recommend discipline. Two charge nurses testified that they either assumed that the forms would lead to discipline or wanted that result; one admitted that she took "action to discipline" an aide when she filled out the form; and another said that she would try to speak to an aide before she "had to . . . get to [the] point" of writing up the aide. Lakepointe's managers also testified that the forms functioned as recommendations for discipline. Both Tanya McCauley, the director of nursing, and Jennifer Schrauben, the human resources manager, testified that the nurses used the forms to initiate Lakepointe's system of progressive discipline. Under this system, aides would move along the disciplinary track with each successive rule violation (as reported on a disciplinary form), from verbal coaching to counseling to suspension or termination. McCauley and Schrauben testified that the disciplinary forms were an important part of this system and, in their experience, always led to discipline. Moreover, at least three charge nurses likely received lower merit raises because their superiors evaluated them poorly in areas such as "administer[ing] discipline as appropriate," directing staff, or overseeing the aides. That Lakepointe evaluated the charge nurses on whether they administered discipline—and then used those evaluations to adjust the nurses' pay—shows that the nurses knew that their actions

(namely, writing up the aides) were a part of Lakepointe's disciplinary system. Hence the nurses recommended discipline when they filled out the forms. *See Springfield*, 721 F.3d at 409, 411.

The Board responds that the managers, rather than the nurses, ultimately determined which specific work rules the aide had violated and what level of discipline was appropriate. But we have already held that, when a nurse fills out disciplinary forms in a system of progressive discipline like the one here, the nurse need not specify the level of discipline to be a supervisor. *See Springfield*, 721 F.3d at 409-10, 411. Moreover, the Board itself has recognized that a supervisor recommends discipline even when her superior "instructs her as to the level of discipline" and "advises [her] on the wording of the discipline notice[.]" *In Re Progressive Transps. Servs., Inc.*, 340 N.L.R.B. at 1045.

In summary, Lakepointe's charge nurses chose whether to write up aides for misconduct. And when the nurses did write them up, the nurses described the rule violation (even if they failed to cite a rule number), and submitted the form so that the managers would discipline the aide. The nurses therefore independently recommended discipline. *See id.*; *cf. Springfield*, 721 F.3d at 409, 411. The regional director's decision to the contrary was not based on substantial evidence.

## 2.

Alternatively, the Board argues that, even if Lakepointe's charge nurses independently recommended discipline, they did not do so "effectively." 29 U.S.C. § 152(11). The nurses' recommendations were effective if Lakepointe's managers gave substantial weight to or regularly relied on them. *See Caremore, Inc.*, 129 F.3d at 369-70; *Cmty. Educ. Centers, Inc.*, 360 N.L.R.B. No. 17, 2014 WL 101671, at *13 (Jan. 9, 2014).

Here, the record makes plain that Lakepointe's supervisors gave substantial if not decisive weight to the charge nurses' recommendations. Lakepointe entered four disciplinary forms into the record, each of which resulted in discipline for the relevant aide. McCauley and Schrauben testified that every disciplinary form they could remember had resulted in discipline and that they routinely approved forms without questioning the allegations of the charge nurse. There was no testimony to the contrary. McCauley also testified that managers did not conduct an "independent investigation" of the nurse's description of the incident. Nor did managers interview aides or witnesses unless the violation "need[ed] to be reported to the State."

The Board contends nonetheless that Lakepointe's managers independently investigated "most of the forms in the record[.]" Recommendations might not be effective when higher-ups independently investigate them. *See Frenchtown Acquisition Co.*, 683 F.3d at 309 n.7. A superior's investigation is not "independent," however, if he simply discusses the incident with the person recommending discipline and then accepts that person's version of events. *See Starwood Hotels & Resorts Worldwide, Inc.*, 350 N.L.R.B. 1114, 1116-17 (2007). Nor does the occasional independent investigation "preclude a finding of supervisory status" when other evidence shows that a recommendation is effective. *See Frenchtown Acquisition Co.*, 683 F.3d at 309 n.7 (emphasis omitted); *see also In Re Progressive Transps. Servs., Inc.*, 340 N.L.R.B. at 1045 n.5.

The Board points to three instances where it says that Lakepointe's managers conducted independent investigations, namely as to the forms disciplining Brenda Moore, Aleisha Ulmer, and Victor Thompson. The charge nurses initially filled in these forms by hand. Later, the managers inquired into the information on the forms and retyped them. But none of these inquiries amounted to an independent investigation. In Moore's case, a manager followed up

with the charge nurse but accepted her statements at face value. In Ulmer's, the managers discussed among themselves the severity of her misconduct (she had failed to take care of a resident, which could have amounted to serious neglect), spoke to the charge nurse, and then discovered that Ulmer had also falsified her timestamped care records; but the managers did not investigate whether the misconduct spelled out on the form had actually occurred. And in Thompson's case, Schrauben testified that she requested some kind of "supporting documentation" for the form just in case someone later questioned "the nurse's decision." Schrauben also said that the nurse's disciplinary form was the reason why the managers disciplined Thompson. In none of these cases is there any evidence that the managers spoke with the aides or any other witnesses in determining whether to discipline the aides. *See Veolia Transp. Servs., Inc.*, 363 NLRB No. 98, 2016 WL 245559, at \*11 (Jan. 20, 2016). Moreover, as shown above, the record shows that the disciplinary forms always led to discipline and that the managers regularly relied on the charge nurses' recommendations without questioning their version of events. The regional director overlooked this evidence when she found that the charge nurses lacked the authority to effectively recommend discipline under 29 U.S.C. § 152(11). Her decision therefore was not based on substantial evidence.

\*     \*     \*

The Board's application for enforcement of its February 11, 2016 order finding that Lakepointe had committed an unfair labor practice is therefore denied.